UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------X

JOAN E. CLEMMONS,

                Plaintiff,        **MEMORANDUM AND ORDER**

     - against -             13-CV-7229 (KAM)

ERIC H. HOLDER, United States
Attorney General, et al.,

                Defendants.

------------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiff Joan E. Clemmons ("plaintiff") brought this action against defendants Eric H. Holder, Loretta E. Lynch, Robert L. Butler, Albert R. Mann, and Leroy C. Clemons alleging violations of her rights under the First, Fourth and Fifth Amendments of the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See generally*, Verified Complaint for Injunctive Relief and Damages ("Complaint" or "Compl.") filed 12/19/13, ECF No. 1.)[1]

        Presently before the court is a motion to dismiss the Complaint by Eric H. Holder, the Attorney General of the United States at the time plaintiff's complaint was

---

[1] The court notes that Dr. Clemmons paid the civil filing fee upon filing her Complaint on December 19, 2013.

filed, and Loretta E. Lynch, the United States Attorney for the Eastern District of New York at the time plaintiff's complaint was filed (collectively, the "Federal Defendants").[2]

### BACKGROUND[3]

Plaintiff resides in Nassau County and is a 1966 graduate of the State University of New York at Buffalo School of Medicine and has been licensed to practice medicine and surgery by the state of New York since 1967. (Compl. at 2.) She is also certified as a specialist in internal medicine and nephrology. (*Id.*)

Dr. Clemmons alleges that she has been subject to a federal investigation that commenced in April 1976 when she was attending a meeting in Philadelphia, Pennsylvania of the American College of Physicians. (*Id.* at 4.) At the Philadelphia meeting, Dr. Clemmons first encountered Mr. Roy Butler, and they maintained a romantic relationship until 1981. (*Id.* at 4-5.) Plaintiff alleges that "[a]

---

[2] Since plaintiff commenced this action, Loretta Lynch was nominated and confirmed as the Attorney General of the United States, and Kelly Currie is the current acting United States Attorney for the Eastern District of New York. The changes in the defendants' official positions have no bearing on the issues in this case, because plaintiff's claim are brought against the Federal Defendants in their "individual capacit[ies]." (Compl. at 1.)

[3] The facts described in the Background are taken from plaintiff's Complaint. The court accepts these factual allegations as true and draws from them all reasonable inferences, but the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

subsequent attempt to re-introduce Mr. Butler in 1987 failed" and Mr. Albert R. Mann "was sent to replace him." (*Id*. at 5.)

Dr. Clemmons states that Mr. Butler was an undercover federal agent who was sent to seduce the plaintiff, thus granting Mr. Butler "limitless access to the plaintiff in order to conduct extensive warrantless searches." (*Id*. at 5.) Mr. Butler searched plaintiff's "papers and effects in order to gather leads to be used to make a case against her, having insufficient probable cause for a search warrant." (*Id*.)

Mr. Butler disseminated false information about plaintiff (i.e., that plaintiff is not a physician, that she is not a citizen of the United States, that she suffers from mental illness) to the United States Attorney for the Eastern District of New York, who subsequently commenced a grand jury investigation that continues to the present day. (*Id*. at 6.) Plaintiff alleges that this grand jury investigation involves the "continuous impaneling of successive grand juries." (*Id*.) As part of this investigation, plaintiff alleges that she is the subject of a program of surveillance, where electronic and mail surveillance, *inter alia*, are used for the purpose of monitoring and disrupting her interactions. (*Id*. at 17.)

3

The Complaint alleges that "[i]n the early 1990's, plaintiff began to seek out explanations for what was happening to her and why." (*Id*. at 10.) Plaintiff sent letters dated November 5, 1993 and March 14, 1994 to the United States Attorney for the Eastern District of New York at the time, Zachary W. Carter, describing the office's alleged investigation and intrusion into her affairs and asking whether she has been subject of any investigation. (*Id*. at 10-11; *see also id*. Exhs. C, D.) Plaintiff also sent letters to the Executive Office of the United States Attorneys and the Department of Justice Office of Professional Responsibility ("OPR") in 2000 and 2001 to protest her federal investigation and surveillance. (*Id*. at Exhs. F, H, J.) The OPR responded to Dr. Clemmons' letter on January 31, 2001, stating that its review of her complaint "found no basis on which action by th[e] office would be warranted." (*Id*. at Exh. I.)

The Complaint also alleges that in connection with plaintiff's employment as a physician at the Veterans' Administration Hospital ("VA") in Northport, New York, plaintiff brought a civil suit against the VA and the Office of Personnel Management ("OPM"). (*Id*. at 7.) Plaintiff alleges that members of the grand jury intervened in her civil suit and "were allowed to play the roles of

4

adversary and judicial officials." (*Id*. at 7.)  In 1990, plaintiff appealed an administrative decision of the State University of New York to the Supreme Court of New York. (*Id*. at 9.)  Dr. Clemmons asserts that this case "was a replica" of her prior experience in federal court and alleges that "[g]rand jurors were acting as court officials" and "her adversary was a juror."  (*Id*.)

In connection with her employment application to the La Guardia Medical Group in 1989, Dr. Clemmons was required to submit letters of recommendation.  (*Id*. at 9.) The Complaint alleged that the letters implied that plaintiff had not completed some training that she claimed to have completed in her application.  (*Id*.)  Consequently, Dr. Clemmons "was able to deduce from this experience that not only was her mail being intercepted, but that its text was being altered."  (*Id*. at 9-10.)  Plaintiff also suspected that her interview was being monitored "and that her interviewer had been primed to follow certain lines of questioning."  (*Id*. at 10.)  Dr. Clemmons ultimately was not hired by La Guardia Medical Group.  (*Id*.)

On March 6, 2002, the building in which plaintiff's residence and office were located was auctioned off at a foreclosure sale which was the "result of the oppressive and tyrannical invasion of her privacy by this

5

fruitless investigation by the" United States Attorney for the Eastern District of New York. (*Id*. at 13.) Dr. Clemmons wrote letters to the OPR in 2000 on March 25th, July 26th and September 17th, regarding her foreclosure and she received no response. (*Id*.) Plaintiff "had the distinct impression that her mailings were intercepted and never reached their destination." (*Id*.) In her efforts to avoid eviction from her residence "in all venues she was shadowed by the ubiquitous grand jury which would intervene in her affairs." (*Id*. at 14)

From 2002 to 2009, plaintiff's mother was hospitalized at the Nassau University Medical Center. (*Id*. at 15.) Plaintiff alleges that the grand jury was conspiring with her sibling and named defendant, Leroy Clemons, to "undermine and sabotage her efforts to secure the most appropriate hospital care for her mother." (*Id*.) When plaintiff was residing with her mother, she allegedly found that grand jurors were masquerading as her mother's home health aides, and they were "snooping" on plaintiff. (*Id*.)

Plaintiff's mother died on May 8, 2009. (*Id*.) Plaintiff states that the United States Attorney of the Eastern District of New York obstructed plaintiff's claim

to property to which she was entitled pursuant to her mother's will. (*Id*. at 16.)

Plaintiff also alleges that the grand jury is currently interfering in her disputes with the Long Island Power Authority and the Nassau County Department of Assessment. (*Id*.) The "USa [sic] presumes to dictate the terms of plaintiff's relationship with her energy provider" and "presumes again to intervene in the assessment of taxes on her real property and to arbitrarily assign to her a school tax exemption she never applied for while denying her the exemption for which she did apply." (*Id*. at 16-17.)

Plaintiff alleges that the foregoing actions by the Federal Defendants have violated her First, Fourth and Fifth Amendment rights and seeks injunctive relief, $11.7 million in compensatory damages, $22.3 million in punitive damages, and attorney's fees. (*Id*. at 25-26.)

The Federal Defendants move to dismiss plaintiff's Complaint on the grounds that her claim is barred by the applicable statute of limitations, plaintiff has not adequately alleged personal involvement by the Federal Defendants and the Federal Defendants are immune from suit. (*See* Mem. of Law in Support of Fed. Defs. Mot. to Dismiss ("Def. Mem."), ECF No. 33.)

**DISCUSSION**

**I. Standard of Review**

In reviewing plaintiff's complaint, the court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted). Nonetheless, a court "should not hesitate to dismiss a *pro se* complaint if it fails altogether to satisfy the pleading standard." *Henry v. Davis*, No. 10 Civ. 7575, 2011 WL 3295986, at *2 n.5 (S.D.N.Y. Aug. 1, 2011).

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); Fed. R. Civ. P. 12(b)(6). This plausibility standard is guided by "[t]wo working principles." *Id*. First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second,

only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**II. Plaintiff's Claim is Time-Barred**

The statute of limitations for a *Bivens* action arising in New York is three years. *Tapia-Ortiz v. Dole*, 171 F.3d 150, 151 (2d Cir. 1999); *Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987). The limitations period begins to run from the date a plaintiff "knows or has reason to know" of the harm that forms the basis for her claim. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994))(quoting *Cullen v. Margiotta*, 811 F.2d 698, 725 (2d Cir.), *cert. denied*, 483 U.S. 1021 (1987)). The Second Circuit, in *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981), explains:

> The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

9

According to the Complaint, plaintiff was aware that she was suffering the alleged harms since the early 1990s. Plaintiff alleges that "[t]he investigation relevant to this complaint commenced in April of 1976," (Compl. at 4) and that "[i]n the early 1990's, plaintiff began to seek out explanations for what was happening to her and why." (*Id*. at 10.) As previously discussed, plaintiff sent letters in the early 1990s and early 2000s to the United States Attorney for the Eastern District of New York, the EOUSA and OPR protesting her federal investigation and surveillance. (*Id*. at 10-12.) For instance, in her April 17, 2001 letter to the OPR, plaintiff stated that the government was intercepting her conversations via a "roving wire-tap" in violation of her Fourth Amendment rights, exactly the same harms she alleges in the instant Complaint. (*Compare id*. at Exh. J *to id.* at 20 (alleging the use of a "roving wiretap" in plaintiff's investigation).) The alleged obstruction of plaintiff's claim to her mother's estate occurred in 2009. Consequently, the statute of limitations on plaintiff's claim began to run in the early 1990s, continued into, in the early 2000s, when the alleged "interception and diversion of [plaintiff's] telephone calls became more noticeable" and at the latest until 2009. (*Id*. at 12, 16.)

Plaintiff opposes the government's argument that her claim is time-barred by arguing that her claim is subject to the equitable tolling doctrine for fraudulent concealment. (*See* Mem. of Law in Opp. to Defs.' Mot. to Dismiss and in Supp. of Pl.'s Cross Mot. for J. ("Pl. Opp.") at 12.) ("Plaintiff still has no appreciation of the nature and full extent of all the injuries she may have sustained . . . in large part because information has been kept from her.")

"Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). The equitable tolling doctrine applies in the context of *Bivens* or § 1983 actions when a "defendant fraudulently conceals the wrong, the time limit of the statute of limitations does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (quoting *Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983)).[4] "To take advantage of this doctrine, however, a plaintiff must submit non-conclusory evidence of a

---

[4] Although the cited cases involve actions pursuant to § 1983, it is well settled that a *Bivens* action is the federal analog to suits brought against state officials under § 1983, and "federal courts have typically incorporated § 1983 law into *Bivens* actions." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

11

conspiracy or other fraudulent wrong *which precluded his possible discovery of the harms that he suffered.*" *Pinaud*, 52 F.3d at 1157-58 (emphasis in original) (citations omitted).

The court finds plaintiff's argument unavailing. Here, plaintiff has not alleged any facts indicating that either Federal Defendant took any steps to conceal the nature of his or her activities toward her. Mere conclusory allegations that "information has been kept from" plaintiff is insufficient to trigger the equitable tolling doctrine for fraudulent concealment. (Pl. Opp. at 12.)

In her opposition, plaintiff also contends that her claim is not time-barred pursuant to the continuing violation doctrine, because the alleged conduct is "in progress." (Pl. Opp. at 13.) The continuing violation doctrine is "largely a creature of Title VII employment discrimination law," *Jackson v. New York State*, 381 F. Supp. 2d 80, 87 (N.D.N.Y. 2005), although the Second Circuit has also applied the doctrine to § 1983 actions involving allegations of discrimination. *See, e.g.*, *Harris v. City of New York* (applying continuing-violation doctrine to § 1983 claim involving allegations of employment discrimination based on disability). The Second Circuit,

12

however, has yet to squarely address whether the continuing violation doctrine applies to civil rights actions pursuant to § 1983 or *Bivens* that do not involve allegations of discrimination. *See, e.g.*, *Sanusi v. Dep't of Homeland Sec.*, No. 06 CV 2929, 2014 WL 1310344, at *5 (E.D.N.Y. Mar. 31, 2014).

Courts in the Second Circuit generally disfavor the continuing violation doctrine and have declined to extend its applicability absent compelling circumstances. *See Cotz v. Matroeni,* 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007) ("Courts in the Second Circuit view continuing violation arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain."); *Trinidad v. New York City Dep't of Corr.,* 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.") Such compelling circumstances include "unlawful conduct tak[ing] place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only

13

belatedly recognizes its unlawfulness." *Koehl v. Greene*, No. 06-cv-0478, 2007 WL 2846905, at *7-9 (N.D.N.Y. Sept. 26, 2007) (quoting *Yip v. Bd. Of Tr. of SUNY*, 03-CV-0959, *4 (W.D.N.Y. Sept. 29, 2004)).

Here, Dr. Clemmons has not alleged any facts of compelling circumstances to otherwise merit application of the continuing violation doctrine, and the court declines to do so. Plaintiff has pinpointed exact dates for the alleged violations of her rights dating back to her first encounter with Mr. Butler in 1976, and she has failed to allege any discriminatory policy. Consequently, the court finds that plaintiff's claim against Federal Defendants is time-barred and grants Federal Defendants' motion to dismiss.[5]

### III. Plaintiff's Request for Judgment

In her opposition, plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 11, default judgment pursuant to Federal Rule of Civil Procedure 55 and summary judgment pursuant to Federal Rule of Civil

---

[5] Moreover, plaintiff alleges no plausible facts that the Federal Defendants were personally involved in the alleged violations. Her claims are thus dismissed on this ground as well. *See Arar v. Ashcroft*, 585 F.3d 559, 569 ("[A] plaintiff in a *Bivens* action is required to allege facts indicating that the defendants are personally involved in the claimed constitutional violation."); *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation.").

Procedure 56. (Pl. Opp. at 13-14.) Plaintiff cites a letter dated October 27, 2014 wherein she lists the deficiencies of Federal Defendants' motion to dismiss, including that (1) Federal Defendants failed to submit an affidavit in support of their factual representations; (2) the docket shows that counsel for Federal Defendants represents all defendants and not just Federal Defendants; and (3) Federal Defendants erred in referencing an Amended Complaint when there was none. (*See* Pl. Letter dated 10/27/14, ECF No. 27.) Plaintiff also contends that Federal Defendants' motion is "designed to administer a mental status examination of the *pro se* litigant." (Pl. Opp. at 13.)

Plaintiff's arguments are unavailing. An affidavit is not required to consider and grant a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally Chambers v. Time Warner*, 282 F.3d 147, 152-54 (2d Cir. 2002). The other two deficiencies on which plaintiff relies are merely administrative and typographical and do not present a legal basis for judgment in plaintiff's favor nor sanctions. For example, although the docket entry text for Notice of Appearance states that counsel for Federal Defendants, Ms. Apicella, represents "All Defendants," the

filed document clearly specifies that Ms. Apicella entered her appearance only for defendants Eric Holder and Loretta Lynch. (*See* Notice of Appearance dated 9/4/14, ECF No. 22.)

**IV. The Remaining Defendants**

The court *sua sponte* dismisses plaintiff's claims against the remaining defendants on the same ground that they are also barred by the statute of limitations. *See, e.g.*, *Walters v. Indus. & Commercial Bank of China, Ltd*. 651 F.3d 280, 293 (2d Cir. 2011) (listing statute of limitations grounds among acceptable bases for *sua sponte* dismissal by district courts). As previously discussed, plaintiff's Complaint alleges that she met Mr. Butler in 1976 and suspected his involvement in the 1990s. The only mention of Mr. Mann found in plaintiff's Complaint alleges that he was introduced as an undercover agent in 1987. The allegations against Mr. Leroy Clemons relate to the hospitalization of her mother, which ended in 2009.

Additionally, plaintiff has failed to serve Mr. Butler.[6] The court cannot exercise personal jurisdiction over a defendant who has not been served. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104

---

[6] In her Affidavit in support of her Opposition, plaintiff admits that Mr. Butler "could not be served." (Aff. in Opp. to Defs' Mot. to Dismiss and in Support of Pl.'s Cross-Mot. for J., filed 11/21/14, ECF No. 29, at 2.)

16

(1987). Where, as here, a court does not have personal jurisdiction over Mr. Butler due to lack of service (and the time for service has expired and has not been extended), the court cannot hear the claim against Mr. Butler and must also dismiss the claim against him pursuant to Federal Rule of Civil Procedure 12(b)(2). *See, e.g.*, *Amnay v. Del Labs*, 117 F. Supp. 2d 283, 287 (E.D.N.Y. 2000).

**V. Futility of Amendment**

The court declines to grant leave to plaintiff to amend her claim, because doing so would be futile. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (leave to amend may properly be denied for futility of amendment); *Cuocco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.") Dr. Clemmons' claim is time-barred for the substantive reason that she became aware of her injury more than three years before the filing of her complaint, and repleading will thus be futile.

**CONCLUSION**

For the foregoing reasons, Federal Defendants' motion to dismiss is granted, and the court dismisses the

17

Complaint against all Defendants in its entirety with prejudice. The Clerk of the Court is respectfully directed to enter judgment pursuant to the foregoing, serve plaintiff with a copy of this Memorandum and Order and Judgment, note service on the docket, and close this case.

Dated:    August 17, 2015
            Brooklyn, New York

                                          _____/s/_____
                                          Kiyo A. Matsumoto
                                          United States District Judge